Leslie T. Gladstone, Trustee
5656 La Jolla Blvd.,
La Jolla, CA 92037
Telephone: (858) 454-9887
Facsimile: (858) 454-9596
E-mail: LeslieG@flgsd.com

Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>CREATIVE CAPITAL LEASING GROUP, LLC,<br><br>Debtor. | Case No.: 07-04977-LT7<br><br>Chapter 7<br><br>**MOTION FOR AN ORDER APPROVING THE SALE OF REMNANT ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 105 AND 363; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  January 12, 2023<br>Time:  10:00 a.m.<br>Dept:  Three (3)<br>Honorable Laura S. Taylor |

Leslie T. Gladstone, chapter 7 trustee ("**Trustee**") for the bankruptcy estate ("**Estate**") of the captioned debtor ("**Debtor**"), hereby requests the entry of an order approving the sale of certain assets of the Debtor's Estate to Oak Point Partners, LLC ("**Oak Point**") free and clear of liens, claims, interests, and encumbrances pursuant to 11 U.S.C. §§ 105 and 363, and related relief ("**Motion**").  In support of the Motion, the Trustee respectfully states as follows:

**Jurisdiction**

1.   The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 363, as well as Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

**Background**[1]

3. On September 10, 2007, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. On or about October 10, 2007, the Debtor's bankruptcy case was converted to one under chapter 7 of the Bankruptcy Code, and the Trustee was appointed as chapter 7 trustee for the Debtor's Estate.

5. After a prior closure, on or about June 10, 2022, the Court entered an order reopening the Debtor's bankruptcy case, and the Trustee was re-appointed as chapter 7 trustee of the Debtor's Estate

6. Since being appointed, the Trustee has administered the Debtor's Estate for the benefit of its creditors in accordance with the Trustee's power and duties with payment from Dr. Ford pending on a Court approved settlement. The Trustee is now in the process of winding down the administration of this case. To that end, the Trustee is engaged in efforts to ensure that the maximum value of the Estate's remaining assets is realized, which efforts include pursuing the sale of any remaining assets.

7. The Trustee has determined that there might exist property of the Debtor's Estate, consisting of known or unknown assets or claims, which have not been previously sold, assigned, or transferred (collectively, "**Remnant Assets**"). Potential unknown assets might include unscheduled refunds, overpayments, deposits, judgments, claims, or other payment rights that would accrue in the

---

[1] The Trustee submits these factual statements supporting the relief requested herein in lieu of a declaration, but is prepared to file a separate supporting declaration if preferred and requested by the Court.

future.

8. The Trustee has conducted due diligence and remains unaware of the existence of any Remnant Assets, and certainly none that could return value to the Estate greater than the Purchase Price. Accordingly, the Trustee has determined that the cost of pursuing the Remnant Assets will likely exceed the benefit that the Estate would possibly receive on account of the Remnant Assets.

9. Remnant Asset sales have become commonplace at the close of commercial bankruptcy cases because they allow for additional funds to be brought into the estate, while simultaneously avoiding the expense and burdens associated with reopening cases for later-discovered assets. Such sales provide a prudent way to fully and finally administer all assets of a debtor's estate.

10. The Trustee and Oak Point have negotiated an agreement ("**Purchase Agreement**") for the sale of the Remnant Assets, substantially in the form attached hereto as Exhibit A.

11. The Purchase Agreement generally provides for a purchase price of $5,000 ("**Purchase Price**") for all Remnant Assets to be paid by Oak Point to the Trustee for the benefit of the Debtor's Estate.  The negotiations were conducted at arm's length and in good faith.  The Trustee has no connection to Oak Point, and is unaware of any relationship between Oak Point and the Debtor, the Debtor's principals, or its agents.  Further, there is no evidence of bad faith or a lack of good faith.

12. In accordance with the Purchase Agreement, the Remnant Assets specifically exclude (a) cash held at the time of this Agreement in the Seller's fiduciary bank account for the Debtor's case; provided, however, that any cash that exists in such bank account one year from the date of the closing of the Debtor's case, except as provided in sub provision (b) herein, shall be Remnant Assets; (b) any returned or undeliverable creditor claim distribution

checks that require administration in accordance with 11 U.S.C. § 347(a); (c) Seller's rights to an anticipated payment of $100,000.00 pending court approval of a settlement with Ford; (d) any and all Goods[2] (e.g., office furniture) of the Debtor; (e) the books and records used by the Debtor in the ordinary course of business, but excluding any recent statements, notices or correspondence received by the Seller relating to Remnant Assets specifically acquired in this Agreement; and (f) the Purchase Price (as hereinafter defined) to be delivered pursuant hereto.

13. In the Trustee's business judgment, the Purchase Price represents a fair and reasonable sales price for the Remnant Assets, and represents the highest and best offer for the sale of the Remnant Assets. Additionally, the benefit of receiving immediate payment for the Remnant Assets, which are largely unknown, outweighs the potential benefit of retaining the Remnant Assets. Finally, the Trustee believes that the cost of pursuing the Remnant Assets will likely exceed the benefit that the Estate would possibly receive.

**Bidding Procedures**

14. Contemporaneously herewith, the Trustee has filed a notice of the Motion ("**Notice**"), which establishes a deadline by which objections or responses to this Motion must be filed with the Court ("**Response Deadline**").

15. The Trustee is prepared to consummate the sale of the Remnant Assets to Oak Point pursuant to the terms set forth herein and in the Purchase Agreement. Notwithstanding, in the event a party other than Oak Point (each, a "**Competing Bidder**") wishes to purchase the Remnant Assets, the Trustee requests that the Court approve the Trustee's application of the overbid procedures set

---

[2] The term "Goods" as used herein shall have the meaning ascribed to it under § 9-102(a)(44) of the Uniform Commercial Code.

forth below (collectively, "**Bidding Procedures**"), the practicality and efficiency of which serve the best interests of the Debtor's Estate and creditors:[3]

    a. Each Competing Bidder who wants to participate in the overbid process must file a notice of overbid with the Court and serve such filing on the Trustee and Oak Point in accordance with the Notice on or before the Response Deadline;

    b. the first overbid by a Competing Bidder for the Remnant Assets must be at least $1,250 more than the Purchase Price, or a total of $6,250;

    c. each Competing Bidder must also submit a Cashier's Check to the Trustee in the amount of such Competing Bidder's first overbid at the time such overbid is filed;

    d. any Competing Bidder for the Remnant Assets must purchase the Remnant Assets under the same terms and conditions set forth in the Purchase Agreement, other than the Purchase Price;

    e. in the event the Trustee receives an overbid that meets the foregoing conditions, the Trustee will notify Oak Point and any Competing Bidders of the date and time by which each party may submit by email its respective best and final offer for the Remnant Assets;

    f. within 1 business day of receiving the best and final offers, the Trustee will notify Oak Point and any Competing Bidders of the winning bid; and

    g. at the time of the hearing on the Motion, the Trustee will request that the Court approve the winning bidder as the purchaser.

## Requested Relief

16. By this Motion, the Trustee seeks the entry of an order pursuant to 11 U.S.C. §§ 105 and 363(b), (f), and (m), as well as Bankruptcy Rule 6004, (a) authorizing the Trustee to sell the Remnant Assets free and clear of all liens, claims, interests, and encumbrances; and (b) approving the terms of the Purchase Agreement.

---

[3] The Trustee makes this request out of an abundance of caution to protect the interests of the Debtor's Estate and its creditors. Trustees too often receive sale inquiries that merely suggest an interest in bidding but are not actual overbids, resulting in unnecessary time and expense to the estate if they must prepare for an auction and hearing all for naught. The Trustee understands that the Bidding Procedures may be considered mooted in the absence of a Competing Bidder.

**Authority for Requested Relief**

17.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Moreover, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

18.     To approve the use, sale or lease of property outside the ordinary course of business, the Court must find that such sale is supported by the sound business judgment of the debtor or trustee, as the case may be.  *See In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbott's Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986) (requiring good faith purchasing); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that transactions should be approved under section 363(b)(1) when: (a) they are supported by the sound business judgment of a debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); and *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith.").

19.     A trustee's showing of sound business judgment, in turn, need not be unduly exhaustive; instead the trustee is "simply required to justify the proposed disposition with sound business reasons."  *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

Whether or not there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. *See Lionel*, 722 F.2d at 1071. Bankruptcy courts are given substantial discretion in deciding whether to authorize a sale of a debtor's assets outside of the ordinary course of business. *See In re Chateaugay Corp.*, 973 F.2d 141, 144 (2d Cir. 1992).

20. The Trustee submits that the sale of the Remnant Assets pursuant to the Purchase Agreement represents a prudent and proper exercise of the Trustee's business judgment under the circumstances, and is in the best interests of creditors of the Debtor's Estate. Specifically, the Purchase Agreement was negotiated at arm's length and in good faith, and the Trustee believes that the Purchase Price is reasonable and represents fair value. Indeed, the Trustee is not aware of any future assets or claims that may be liquidated, obtained or otherwise administered, and absent the sale to Oak Point, the Debtor's Estate would not realize any benefit on account of the Remnant Assets. Therefore, the Trustee respectfully requests that the Court approve the sale of the Remnant Assets to Oak Point.

21. Moreover, based on the foregoing, Oak Point should be deemed a good faith purchaser. Although the Bankruptcy Code does not define "good faith purchaser," the United States Court of Appeals for the Third Circuit construing section 363(m), has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value'." *In re Abbott's Dairies of Pa., Inc.*, 788 F.2d at 147; *see also In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); and *In re Vanguard Oil & Serv. Co.*, 88 B.R. 576, 580 (E.D.N.Y. 1988).

22. Additionally, section 363(f) of the Bankruptcy Code permits a trustee to sell assets free and clear of all interests which may be asserted against such assets, with any such interests attaching to the net proceeds of the sale, if subject to the rights and defenses of a debtor with respect

thereto:

a. Applicable nonbankruptcy law permits sale of such property free and clear of such interest;

b. Such entity consents;

c. Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d. Such interest is in bona fide dispute; or

e. Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). As section 363(f) of the Bankruptcy Code is stated in the disjunctive, when proceeding pursuant to section 363(b), it is only necessary to meet one of the five conditions of section 363(f). To the extent that there are interests that may be asserted in the Remnant Assets, the Trustee believes that one or more of the aforementioned conditions have been satisfied.

23. Finally, the Trustee's proposed Bidding Procedures are appropriate and should be approved by the Court provided that a Competing Bidder submits an overbid to purchase the Remnant Assets. The Bidding Procedures not only provide parties sufficient notice for participation, but also permit the Trustee to apply a fair, practical and efficient means to receive and evaluate overbids for the Remnant Assets. Courts have routinely held that when the sale of assets in bankruptcy is done on a competitive bidding basis, as is proposed herein, it is appropriate to require parties submitting competing bids to submit bids that exceed the existing bid by a specified amount. *See, e.g.*, *In re Financial News Network Inc.*, 931 F.2d 217 (2d Cir. 1991). Oak Point has expended, and will continue to expend, considerable time, money, and energy pursuing the purchase of the Remnant Assets as proposed herein, and has engaged in good faith, arm's length negotiations with the Trustee.

**Waiver of Stay of Order**

24.     To successfully implement the Purchase Agreement, the Trustee also seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).

**Notice**

25.     Notice of this Motion has been given to the Debtor, the Office of the United States Trustee, Oak Point, and all parties requesting notice pursuant to Bankruptcy Rule 2002. The Trustee submits, and requests that this Court determine, that such notice is proper and adequate; no further notice is required; and that other and further notice be waived.

WHEREFORE, the Trustee respectfully requests entry of an order authorizing the sale of the Remnant Assets pursuant to the terms of the Purchase Agreement, waiving the fourteen-day stay under Bankruptcy Rule 6004(h), and granting such other and further relief as this Court deems just and proper.

Dated: November 30, 2022                   /s/ Leslie T. Gladstone
                                           Leslie T. Gladstone, Chapter 7 Trustee

# EXHIBIT "A"

# EXHIBIT "A"

ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of November __, 2022, is by and between **LESLIE T. GLADSTONE, not individually, but solely as chapter 7 trustee** ("Trustee" or "Seller") **of CREATIVE CAPITAL LEASING GROUP, LLC** ("Debtor") **BANKRUPTCY ESTATE** ("Estate"), and **OAK POINT PARTNERS, LLC** ("Purchaser").

WITNESSETH:

WHEREAS, on or about September 10, 2007, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of California ("Court"), assigned Case No. 07-04977; and

WHEREAS, on or about October 10, 2008, the Debtor's bankruptcy case was converted to a case under chapter 7 of the Bankruptcy Code, and the Trustee was appointed as chapter 7 trustee of the Debtor's Estate and

WHEREAS, after a prior closure, on or about June 10, 2022, the Court entered an order reopening the Debtor's bankruptcy case, and the Trustee was re-appointed as chapter 7 trustee of the Debtor's Estate; and

WHEREAS, at the time of the execution of this Agreement and continuing into the future, there may be property of the Estate remaining, consisting of known or unknown assets or claims which have not been previously sold, assigned, or transferred (collectively, "Remnant Assets"); and

WHEREAS, Remnant Assets specifically **exclude**: (a) cash held at the time of this Agreement in the Seller's fiduciary bank account for the Debtor's case; provided, however, that any cash that exists in such bank account one year from the date of the closing of the Debtor's case, except as provided in sub provision (b) herein, shall be Remnant Assets; (b) any returned or undeliverable creditor claim distribution checks that require administration in accordance with 11 U.S.C. § 347(a); (c) Seller's rights to an anticipated payment of $100,000.00 pending court approval of a settlement with Ford; (d) any and all Goods[1] (e.g., office furniture) of the Debtor; (e) the books and records used by the Debtor in the ordinary course of business, but excluding any recent statements, notices or correspondence received by the Seller relating to Remnant Assets specifically acquired in this Agreement; and (f) the Purchase Price (as hereinafter defined) to be delivered pursuant hereto; and

WHEREAS, subject to Court approval, Seller has the power and authority to sell and assign all right, title and interest in and to the Remnant Assets to Purchaser, including, but not limited to the proceeds thereof.

NOW THEREFORE, in consideration of the promises and mutual undertakings herein contained, Seller and Purchaser agree as follows:

1. **Purchase Price.** The Purchase Price shall be good funds in the amount of Five Thousand and No/100 Dollars ($5,000.00) payable within 3 business days of receipt by Purchaser of this executed Agreement and the entry of a non-appealable Order of the Court approving this Agreement.

2. **Assignment of Remnant Assets.** Seller hereby irrevocably and unconditionally sells, assigns,

---

[1] The term "Goods" as used herein shall have the meaning ascribed to it under § 9-102(a)(44) of the Uniform Commercial Code.

1

transfers and conveys to Purchaser all of Seller's right, title and interest under, in and to the Remnant Assets, as well as any and all claims and rights related to the Remnant Assets, including, without limitation, all cash, securities, instruments and other property that may be paid or issued in conjunction with the Remnant Assets and all amounts, interest, and costs due under the Remnant Assets.

3. **Authority to Sell.** Subject to Court approval, the sale of the Remnant Assets by Seller is made pursuant to the authority vested in Seller.

4. **Payments Received on Remnant Assets.** Seller further agrees that any payments received by Seller on account of any Remnant Assets shall constitute property of Purchaser to which Purchaser has an absolute right, and that Seller will promptly deliver such payment to Purchaser at Purchaser's address set forth below. Seller agrees to use reasonable efforts to forward to Purchaser notices received with respect to any Remnant Assets.

5. **Seller's Representations and Warranties.** In consideration of Purchaser's agreements herein and to induce Purchaser to enter into this Agreement, Seller represents and warrants to Purchaser that Seller has full lawful right, title, power and authority to enter into this Agreement and to convey Seller's interest to Purchaser in the Remnant Assets as is set forth in this Agreement.

**EXCEPT AS SPECIFICALLY SET FORTH HEREIN, SELLER SELLS, ASSIGNS, AND TRANSFERS THE REMNANT ASSETS TO PURCHASER "AS IS, WHERE IS" WITHOUT ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, WHETHER EXPRESS, IMPLIED OR IMPOSED BY LAW.**

6. **Free and Clear Sale.** The sale of Remnant Assets shall be free and clear of any liens, claims, or encumbrances pursuant to 11 U.S.C. § 363(f).

7. **No Assumption of Liabilities.** Notwithstanding any other provision of this Agreement, the parties agree that Purchaser is acquiring only the Remnant Assets and rights and interests related thereto, and that Purchaser is not acquiring or assuming, nor shall it be deemed to have acquired or assumed, any liabilities or obligations, including lien obligations, of Seller or its affiliates of any kind or nature, whatsoever, whether known or unknown, existent or future, arising out of, or in connection with, the Remnant Assets, except as may otherwise expressly be provided herein.

8. **Documents of Assignment.** From time to time upon request from Purchaser, Seller shall execute and deliver to Purchaser such documents reasonably requested by Purchaser to evidence and effectuate the transfer contemplated by this Agreement in a form reasonably acceptable to the parties hereto. However, Purchaser shall reimburse Seller for its reasonable costs associated with such compliance.

9. **Limited Power of Attorney.** Solely with respect to the Remnant Assets, and to the extent permitted by law, Seller hereby irrevocably appoints Purchaser as its true and lawful attorney and authorizes Purchaser to act in Seller's stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Remnant Assets herein assigned. Seller grants unto Purchaser full authority to do all things necessary to enforce the transfer of the Remnant Assets to Purchaser and its rights thereunder pursuant to this Agreement.

10. **Entire Agreement.** This Agreement embodies the entire agreement and understanding between Seller and Purchaser and supersedes any and all prior agreements and understandings with respect to the subject matter hereof. This Agreement may not be amended or in any manner modified unless such amendment or modification is in writing and signed by both parties.

11. **Benefits and Binding Effect.** All provisions contained in this Agreement or any document referred

2

to herein or relating hereto shall inure to the benefit of and shall be binding upon the respective successors and assigns of Seller and Purchaser.

12. **Governing Law.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of California, without giving effect to choice of law principles of the State of California.

13. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument, and copies or facsimiles of execution signatures shall be equivalent to original signatures.

**THIS AGREEMENT** has been duly executed as of the day and year first above written.

**OAK POINT PARTNERS, LLC**

By: _/s/ Eric A. Linn_
Name: ERIC LINN
Its: Chief Executive Officer & President

Address *(for regular mail and mail forwarding)*: PO Box 1033, Northbrook, IL 60065-1033
Address *(for overnight delivery)*: 5215 Old Orchard Road, Suite 1000, Skokie, IL 60077
Tel (847) 577-1269     Fax (847) 655-2746

**CREATIVE CAPITAL LEASING GROUP, LLC BANKRUPTCY ESTATE**

By: _____
Name: LESLIE T. GLADSTONE
Its: Chapter 7 Trustee

Address: c/o Financial Law Group, 5656 La Jolla Blvd., La Jolla, CA 92037
Tel (858) 454-9887

3